MICKELSON and another, Plaintiffs, vs. CITIES SERVICE OIL COMPANY, Defendant: BERSCHENS and another, Impleaded Defendants. [Two appeals.]

*January 13—February 25, 1947.*

2

For the plaintiffs there was a brief by *Bull, Biart &·Bieber-stein* and *Wilkie, Toebaas, Hart & Jackman,* all of Madison, and oral argument by *Benjamin Bull* and *Lawrence E. Hart.*

For the defendant Cities Service Oil Company there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Arthur Wickham* of counsel, all of Milwaukee, and oral argument by *Mr. Wickham.*

For the impleaded defendants Mathias L. Berschens and Emery Ellingson there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *R. J. Sutherland.*

ROSENBERRY, C. J. In September, 1944, the defendant oil company sold three of its old horizontal tanks, which the defendant Berschens agreed to dismantle. After the tanks were dismantled and on November 22, 1944, the defendant company entered into a contract with Berschens to remove the old brick piers where the horizontal tanks had been placed, to level off the ground and to spread the necessary crushed stone for the foundations of three new vertical tanks. This contract was completed in the latter part of November. The John Petersen Manufacturing Company furnished three new perpendicular tanks and these were installed by Berschens with two or three employees during the latter part of November. The tanks were eleven feet in diameter and twenty-one feet high.

On December 4, 1944, the defendant company made a contract with Ellingson by which Ellingson agreed to install the pipes and valves and to make the necessary connections between the pump house and the new tanks. The pipes were furnished by the defendant company. Ellingson made this installation during the first part of December, except that he was to return later to check the lines after gasoline had been placed in the tanks.

After the erection of the tanks, the defendant company made an oral contract with Berschens whereby he was to furnish the labor and material necessary to install a catwalk on the top of the three new tanks and erect a ladder leading to the catwalk.

After some discussion between the company and Berschens, it was agreed that the catwalk should be attached to lugs which should be welded on the top of the tanks. Berschens had no welding equipment and sublet the welding work to the Johnson Welding Company of which Mickelson was an employee. The job required electric arc welding, cutting of joints, and the making of angles to fit. At the time of the making of this contract Boehnen, representing the Johnson Welding Company, asked Berschens if there was gas in the tanks, to which Berschens replied: "No, they are brand new." Boehnen said: "We are not going to do any welding on gasoline tanks full of gas." Berschens then volunteered the information that he had just hauled the tanks there and put them up and repeated the statement that "there is no gasoline in them." Boehnen then replied: "Oh, that is altogether different."

Ellingson testified that in the process of connecting up the tanks with the rest of the plant, he found some gas in one of the old pipes which he let run out on the ground "and later I asked my employee if there was gasoline in the other pipe and he stated there was." There was considerable controversy with respect to the statement made by Ellingson, which in view of the conclusion we have reached, it is not necessary to set out.

The defendant company contends that it is not liable under the safe-place statute in the absence of actual or constructive knowledge of danger or defects, and cites a number of cases dealing with defects due to failure to repair, lighting of steps, etc., but cites no case where the party against whom liability was claimed was dealing with a highly dangerous agency such as gasoline. Because thousands of people deal daily with gasoline without harm we sometimes forget how highly explosive the fumes are and what terrific force an explosion of gasoline fumes may exert.

While the operation by which the horizontal tanks were to be replaced by vertical tanks did not require the handling of

gasoline, the whole object and purpose of the defendant company was to install the new tanks, have them connected to its plant so that the new tanks could be filled with gasoline. Nothing stood between the new tanks to prevent the flow of gasoline from the pumping station except one or two valves which could be opened and closed by anyone. That a situation was created which required a high degree of care to prevent the flow of gasoline into the tanks before the operation was completed is obvious. Under the series of contracts made by the defendant company, the subcontractors were not required to exercise any precautions whatever in that regard. During the entire operations the premises were wholly under the control of the defendant company. Under the safe-place statute it was the duty of the defendant company to take such precautions as were necessary to make the place reasonably safe. This duty it could not delegate. Although fully informed as to the methods which Berschens and his subcontractor were to use in erecting a catwalk, no test was made to determine whether gasoline in any quantity had been permitted to flow into the new tanks. Under these circumstances the finding of the jury that the defendant company failed to furnish a place of employment as free from danger to the life, health, safety, and welfare of frequenters as the nature of the place of employment would reasonably permit, must be sustained. *Criswell v. Seaman Body Corp.* (1940) 233 Wis. 606, 618, 290 N. W. 177. See also *Hartford Acc. & Ind. Co. v. Worden-Allen Co.* (1941) 238 Wis. 124, 129, 297 N. W. 436.

The defendant company contends that Berschens was negligent in making representations to the Johnson Welding Company to the effect that there was and had been no gasoline in the tanks to which the lugs were to be welded. The court submitted this contention to the jury under proper instructions and the jury found in favor of Berschens. We find no evidence which would support a finding to the contrary. It

appears that such representations as were made were made before Ellingson had connected the new tanks with the defendant company's pumping station and when made were true. It does not appear that Berschens had any reason to suppose that the condition of the tanks was not the same as when he left them. The jury's finding upon this question cannot be disturbed.

The jury also found that the defendant Ellingson was not negligent with reference to the presence of gasoline in the tank which exploded. Under the evidence in this case that is equivalent to a finding that while making the connections with the pumping station Ellingson did not permit gasoline to flow into the new tanks. There is evidence to the effect that there was some gasoline in the pipes which were furnished by the defendant company and used by Ellingson. So far as the evidence shows this gasoline was permitted to run out of the pipes. From the evidence it appears that after the explosion there were from twenty to twenty-five gallons of gasoline remaining in the tank in which the explosion occurred. It seems incredible that any such quantity of gasoline remained in the pipes which were to be connected and there is no evidence that Ellingson or his employees opened the valves or in any other way permitted gasoline to enter the pipe line.

It is quite true that someone must have manipulated the valves. The line from the pumping station was closed by a valve which was not put in by Ellingson. It cannot be assumed from the facts in this case that Ellingson or his employees caused gasoline to flow into the tank from the pumping station. Ellingson had partial possession of the premises for the purpose of making the pipe connections but for no other purpose. It would seem that a very slight inspection made prior to the time that Mickelson commenced welding would have disclosed the presence of the gasoline. Mr. King, manager of the defendant company's plant, knew that it would require a very high degree of heat to weld the lugs to the top

of the tanks, and that if a high degree of heat was applied to the outside of a tank containing gasoline or gasoline vapor, an explosion would occur. The entire plant being under the control of the defendant company at all times, and the company having knowledge of the means which were to be employed to fasten lugs to the top of the tanks, the defendant company took no steps to assure itself that at the time the plaintiff's deceased husband commenced to work, there was no gasoline in the tank. At the top of the tanks was a manhole through which inspection could have readily been made. So far as the liability of the defendant company is concerned, there can be no question. The jury having found against the defendant company's contention as to liability of Berschens and Ellingson, the defendant company is not entitled to recover either indemnity or contribution from Berschens or Ellingson.

*By the Court.*—Judgment affirmed.